IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 16, 2020 Session

## STATE OF TENNESSEE v. THARCISSE JOHN NKURUNZIZA

**Appeal from the Criminal Court for Knox County**
**No. 114309   Kyle A. Hixson, Judge**

_____

#### No. E2020-00326-CCA-R3-CD

_____

The Appellant, Tharcisse John Nkurunziza, pled guilty in the Knox County Criminal Court to vehicular assault, a Class D felony, with the trial court to determine the length and manner of service of the sentence.  After a sentencing hearing, the trial court sentenced him as a Range I, standard offender to four years to be served as ten months in jail followed by supervised probation.  On appeal, the Appellant claims that his sentence is excessive because the trial court misapplied enhancement factors and that the trial court erred by denying his request for full probation.  The State acknowledges that the trial court misapplied two of the three enhancement factors but contends that the record justifies the sentence.  Based upon the oral arguments, the record, and the parties' briefs, we agree with the State and affirm the judgment of the trial court.

#### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jonathan P. Harwell (on appeal) and Carter Pack (at guilty plea and sentencing hearings), Knoxville, Tennessee, for the appellant, Tharcisse John Nkurunziza.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Charme P. Allen, District Attorney General; and Gregory Eshbaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

#### OPINION

#### I.  Factual Background

In November 2018, the Knox County Grand Jury indicted the Appellant for vehicular assault, reckless endangerment, driving under the influence (DUI) per se, DUI,

and failing to provide proof of financial responsibility. In October 2019, he pled guilty to vehicular assault, and the State dismissed the remaining charges. Pursuant to the plea agreement, the trial court was to determine the length and manner of service of the sentence.

At the Appellant's guilty plea hearing, the State gave the following factual account of the crime:

Your Honor, had this case gone to trial, the State would expect to show through the testimony of the witnesses listed in the indictment that on the 5th day of April 2017, officers received reports at approximately 11:37 in the evening, reports of a gray Chevrolet Impala driving the wrong direction on I-40 eastbound near Asheville Highway. At 11:40 p.m., officers received a second call of a head-on collision at I-40 eastbound near I-640.

Upon arrival, officers found the defendant behind the wheel of a gray Chevrolet Malibu bearing tag V5604D. They found that that had struck a Ford SUV head-on. That Ford was driven by Mr. Tedder. Officers observed the defendant had a strong odor of an alcoholic beverage about his person, was disoriented. He was asked about a blood draw, Your Honor. Did refuse to provide a blood draw at that time. Officer Dorwart was able to obtain a search warrant for Mr. Nkurunziza's blood. That was executed approximately three hours after the crash, sent to the TBI where it was tested. It came back as a .207.

Mr. Tedder was transported to the University of Tennessee Medical Center for his injuries, which did include an open displaced calcinosis fracture of his right calcinosis as well as a distal femoral parasitic fracture, again, on the right leg, which required extensive treatment and recovery, Your Honor. It also involved debridement of the tissue as well as the bone on parts of Mr. Tedder's right leg.

Furthermore, Mr. Nkurunziza's medical records revealed that there was a blood alcohol test performed by the hospital approximately two hours after the crash, so an hour before the TBI draw was accomplished, which showed that his BAC at that time was .237. That was the serum so it would be a little higher. Mr. Nkurunziza also made a statement to medical personnel, as reflected in the medical records, that said, "I drink for a living."

All of these events did occur in Knox County, Tennessee.

After the State completed its recitation of the facts, the trial court asked defense counsel if there were any "[a]dditions or corrections," and defense counsel said no.

The trial court held a sentencing hearing on January 30, 2020. At the outset of the hearing, the State introduced the Appellant's presentence report into evidence. According to the report, the then twenty-five-year-old Appellant was single but had a girlfriend with whom he had two young daughters. The report stated that the Appellant was born in Burundi, Africa; was one of eight children; and was raised in refugee camps until he came to Tennessee in 2015. The Appellant stated in the report that he currently lived with his parents and younger siblings but that he saw his children regularly and paid $530 per month in child support. The Appellant stated in the report that he attended high school in Tanzania but that he dropped out in the ninth grade. He described his mental and physical health as "good," stated that he last consumed alcohol in 2019, and denied the use of illegal or nonprescribed drugs. The report showed that the Appellant worked as a sales associate for Leisure Pools and Spas from January 2017 to December 2019 and that he began working as a laborer for Express Personnel in January 2020. A risk assessment was included in the presentence report. The assessment showed the Appellant to be high risk in the areas of residential and education needs and to be low risk for friends, attitudes and behaviors, aggression, mental health, alcohol and drug use, family, and employment.

Roney Tedder gave an oral victim impact statement. Mr. Tedder said that the crash broke his femur bone, that he had metal in his leg, and that he was "stopped all the time" when passing through metal detectors. After the crash, Mr. Tedder had to keep his foot elevated for seven months, lost his job as a commission sales representative because he could not meet with his customers or obtain new customers, and lost over one million dollars in sales. At the time of the sentencing hearing, Mr. Tedder still could not "function in [his] job duties" because the crash damaged his lymph system, causing his foot to swell. Mr. Tedder's daughter, who was a student at the University of Tennessee at Chattanooga in April 2017, also was impacted and left school while studying for exams to be with him in the hospital. Mr. Tedder's brother gave up three weeks of vacation time to stay with him and help him at home. At the time of the crash, Mr. Tedder had a new girlfriend. After the crash, though, he was unable to "go out" or take her to dinner, so the crash "cost [him] a relationship." He said that he had to take Advil every morning "just to help me get started" and that he no longer could go on hikes or play sports. He stated that his mobility was permanently affected, that he had difficulty going up and down stairs, and that the nerves in his foot were damaged. Mr. Tedder stated that he had undergone three surgeries at UT Medical Center and four surgeries at Vanderbilt and that additional surgeries may be required due to "a multitude of injuries" and complications. Mr. Tedder requested that the trial court sentence the Appellant to "the maximum of whatever penalty he can get."

The Appellant made a brief allocution in which he stated,

From the bottom of my heart, I want to apologize to that guy from the bottom of my heart. I'm so sorry. And that I'm really sorry for the State. I just have to say sorry. I never -- my wish is tell our kids like how I tell other people -- that's where I live -- drink and driver is danger. It can lose somebody's life and it can lose your life too and your future. I would never drink and drive in my life again. And I apologize. I'm so sorry to him. That's all I can say.

The State argued that three enhancement factors were applicable to the Appellant's sentence. First, the State contended that enhancement factor (1) regarding the Appellant's prior criminal history was applicable because the Appellant "had several run-ins with law enforcement in Knox County" after he committed the offense in this case. Specifically, the Appellant was charged with domestic assault and patronizing prostitution. The State claimed that although both of the charges were dismissed, enhancement factor (1) was applicable because the Appellant "certainly [had] some criminal history."

Next, the State argued that enhancement factor (6) regarding the victim's injuries being particularly great was applicable. The State noted that serious bodily injury was an element of vehicular homicide but claimed that the factor still applied because "there are degrees of serious bodily injury, and the State would submit that this was a relatively aggravated case as far as that's concerned." Finally, the State argued that enhancement factor (10) regarding the defendant's having no hesitation about committing a crime when the risk to human life was high was applicable because the Appellant was driving the wrong way on Interstate 640, which was "obviously extraordinarily dangerous," while having a blood alcohol content of "two and a half times over the .08." The State requested that the trial court give "some weight" to enhancement factors (1) and (6) but give "great weight" to enhancement factor (10) and sentence the Appellant to four years.

Regarding the manner of service of the sentence, the State described the victim's injuries as "horrific" and asserted that this case easily could have ended up being a vehicular homicide case. The State again contended that driving the wrong way on the interstate was "extraordinarily dangerous" and stated that the Appellant "placed Lord only knows how many people in danger of being hit and injured." The State argued that the facts of the case were "particularly egregious" and, therefore, that some confinement was necessary to avoid depreciating the seriousness of the offense. The State requested that the Appellant serve one year in confinement with the remainder to be served on probation.

Defense counsel responded that enhancement factor (1) was inapplicable because the Appellant did not have a criminal history and that enhancement factors (6) and (10) were inapplicable because they were inherent in the offense of vehicular assault. Defense counsel contended that the trial court should mitigate the Appellant's sentence because he

- 4 -

lacked a criminal history, was only twenty-two years old at the time of the crime, voluntarily completed DUI school, voluntarily submitted to an alcohol and drug assessment, and accepted responsibility for the crime "by pleading guilty blind." Defense counsel requested that the trial court sentence the Appellant to two or three years and that he serve the entire sentence on probation.

The trial court noted that the range of punishment for a Range I, standard offender convicted of a Class D felony was two to four years. See Tenn. Code Ann. § 40-35-112(a)(4). The trial court found that enhancement factor (1), that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," was applicable to the Appellant's sentence. Tenn. Code Ann. § 40-35-114(1). The trial court noted that while the Appellant's criminal history was "not as extensive as what we are used to seeing," the Appellant "doesn't come before the court with entirely clean hands, particularly with picking up another charge while this case was pending." The trial court found that enhancement factor (6), that "[t]he personal injuries inflicted upon . . . the victim was particularly great," also was applicable. Tenn. Code Ann. § 40-35-114(6). The trial court found, though, that the court was "limited in the amount of weight" it could place on enhancement factor (6) because serious bodily injury was an element of the offense. Finally, the trial court found that enhancement factor (10), that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," was applicable, stating,

> I don't think the defendant intentionally got on the interstate going the wrong way, but he did intentionally ingest alcohol that night and he ingested more than two drinks to get to a .207. That is a high level of intoxication, and to get behind the wheel of a car in that shape and in that condition was certainly a decision that he made that had very, very, very dire consequences for an innocent citizen, and the defendant now is facing the consequences that he has incurred by that decision.

Tenn. Code Ann. § 40-35-114(10). The trial court found that no mitigating factors were applicable and imposed a four-year sentence.

As to the manner of service of the sentence, the trial court noted that the Appellant "seem[ed] to have a lot of things going for him personally in terms of his family," was employed and trying to contribute to society, and was trying to build a life in this country. However, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses. See Tenn. Code Ann. § 40-35-103(1). Accordingly, the trial court ordered that the Appellant serve ten months of his four-year sentence in jail followed by supervised probation.

## II.  Analysis

The Appellant contends that his four-year sentence is excessive because the trial court misapplied all three enhancement factors and that the trial court erred by denying his request for full probation except for the statutory minimum jail sentence.  The State acknowledges that the trial court misapplied enhancement factors (1) and (6) but argues that the trial court properly applied enhancement factor (10), which justified the Appellant's four-year sentence.  The State also argues that the record supports the trial court's denial of full probation.  We agree with the State.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness.  State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); State v. Caudle, 388 S.W.3d 273, 79 (Tenn. 2012) (applying the standard to alternative sentencing).  In determining a defendant's sentence, the trial court considers the following factors:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the potential for rehabilitation or treatment.  See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98.  The burden is on the Appellant to demonstrate the impropriety of his sentence.  See Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

Regarding alternative sentencing, a defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The Appellant's sentence meets this requirement. Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the Appellant is considered to be a favorable candidate for alternative sentencing because he is a standard offender.

The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

During the sentencing hearing, the trial court stated as follows:

Of course, this Court was not present for the plea hearing, and therefore, did not hear the stipulation of facts in this case. So the Court at this point is relying upon the official version that's set forth in the PSI, but the Court will note that does not contain any information concerning the results of the blood draw.

At that point, the State read the recitation of facts from the guilty plea hearing transcript to the trial court. Thereafter, the trial court asked defense counsel, "Does that fairly state the stipulated facts that were set forth in the original plea hearing? Defense counsel responded that he did not recall stipulating to the results of the hospital blood draw, which found that the Appellant's blood alcohol content was .23, or to the Appellant's stating to hospital personnel, "I drink for a living." The State agreed to "waive consideration of the hospital blood" but stated that the Appellant's comment to hospital personnel was "definitely" included in the recitation of facts at the guilty plea hearing. The trial court ruled that it would not consider "the .23 level in the blood serum." We note, however, that the State's recitation of facts at the guilty plea hearing included that the Appellant's serum blood alcohol content was .23 two hours after the crash. After the State's recitation, the trial court asked defense counsel if there were any corrections, and defense counsel said no. Therefore, the Appellant's having a blood alcohol content of .23 was properly before the trial court at sentencing.

Turning to the Appellant's claim that his sentence is excessive, the Appellant's presentence report does not reflect any criminal history that would justify applying enhancement factor (1) to his sentence. Although the presentence report shows that the Appellant was charged with committing two traffic offenses on April 21, 2018, and patronizing prostitution on July 21, 2017, the report also shows that the charges were dismissed. A trial court should not use evidence showing mere arrests, without more, to enhance a sentence. State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993) (citing State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990)). A trial court may consider past criminal behavior which was the basis of an arrest if it is established by a preponderance of the evidence. State v. Carico, 968 S.W.2d 280, 287 (Tenn. 1998). Here, the charges against the Appellant were dismissed, and as the trial court noted, the State did not present any evidence to establish the criminal behavior by a preponderance of the evidence. Moreover, enhancement factor (6) cannot be used to enhance a sentence for vehicular assault because "particularly great" injury is inherent in the offense, which requires that the victim suffer serious bodily injury.[1] State v. William Jeffery Sweet, No.

---

[1] Tennessee Code Annotated section 39-13-106(a) provides, "A person commits vehicular assault who, as the proximate result of the person's intoxication as set forth in § 55-10-401, recklessly causes serious bodily injury to another person by the operation of a motor vehicle."

E2008-00100-CCA-R3-CD, 2009 WL 2167785, at *15 (Tenn. Crim. App. at Knoxville, July 21, 2009) (relying on State v. Jones, 883 S.W.2d 597,602 (Tenn. 1994)). Thus, the trial court erred by applying enhancement factors (1) and (6).

The Appellant contends that the trial court also misapplied enhancement factor (10) because the record fails to show that a person other than the victim was put at risk. We disagree. As noted by the Appellant, this court held in State v. Rhodes, 917 S.W.2d 708, 714 (Tenn. Crim. App. 1995), that enhancement factor (10) does not apply to vehicular assault where the record does not indicate that any other person was actually threatened by defendant's driving because "vehicular assault [unquestionably] reflects the legislature's appreciation of the substantial risk of and actual degree of harm that results from [the] caused injury." However, this court has held that a trial court did not err by applying enhancement factor (10) to a sentence for vehicular assault when the record showed that the defendant, who had a blood alcohol content of .281, crossed into the opposite lanes on an interstate that was within the city limits of an urban area and struck the victim's vehicle head-on. State v. Davis Oliver Brown, No. 03C01-9608-CR-00313, 1997 WL 785671, at *3 (Tenn. Crim. App. at Knoxville, Dec. 16, 1997).

Similarly, the Appellant, who had a serum blood alcohol content of .23 two hours after the crash, traveled westbound in the eastbound lanes of Interstate 40 near Asheville Highway and struck Mr. Tedder's vehicle head-on near Interstate 640. The proof presented at the guilty plea hearing was that the police received reports, in the plural, of the Appellant's driving the wrong way on the interstate before he collided with Mr. Tedder. Therefore, the record sufficiently corroborates the trial court's application of enhancement factor (10).

Although the trial court misapplied enhancement factors (1) and (6), the trial court gave the factors slight weight. Additionally, our supreme court has explained that a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed. . . . So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Bise, 380 S.W.3d at 706. In this case, enhancement factor (10) was applicable to the Appellant's sentence, and the trial court gave it greater weight than enhancement factors (1) and (6). Thus, we conclude that the trial court did not abuse its discretion by imposing a four-year sentence.

As to the manner of service of the Appellant's sentence, the Appellant claims that the trial court "did not point to anything in the offense committed here that established it was a particularly egregious vehicular assault under the Trent standard" and that the trial court's finding of the need for deterrence "was unsupported by anything in the record." The trial court stated that this was "a very difficult case" but found that some period of

confinement was necessary in order to avoid depreciating the seriousness of the offense and to deter the Appellant and others. Generally, when denying alternative sentencing based on the seriousness of the offense alone, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Trotter, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). In order for a a trial court to deny probation solely on the basis of the offense itself, "the circumstances of the offense as particularly committed in the case under consideration must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense. State v. Trent, 533 S.W.3d 282, 292-93 (Tenn. 2017) (emphasis in the original).

Likewise, in State v. Hooper, 29 S.W.3d 1, 10-12 (Tenn. 2000), our supreme court specifically noted the following non-exclusive factors for consideration when denying probation solely upon the basis of deterrence:

> (1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole;
>
> (2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior;
>
> (3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case;
>
> (4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and
>
> (5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Our supreme court noted in State v. Sihapanya, 516 S.W.3d 473, 476 (Tenn. 2014), that "the heightened standard of review [from Hooper and Trotter] that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable" when the trial court "combined the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense." This court has explained that according to Sihapanya,

[I]f only one factor found in Tennessee Code Annotated section 40-35-103(1) is utilized by the trial court, the trial court must make additional findings. If, however, the trial court bases the denial of alternative sentencing on more than one factor, we review the denial to determine if the trial court abused its discretion.

State v. Robert Allen Lester, Jr., No. M2014-00225-CCA-R3-CD, 2014 WL 5501236, at *5 (Tenn. Crim. App. at Nashville, Oct. 31, 2014).

In the instant case, the trial court found that alternative sentencing should be denied because of the seriousness of the offense and also because of the need for deterrence. Therefore, based upon Sihapanya, the trial court was not required to make further specific findings. See State v. Joseph D. Sexton, No. M2017-00735-CCA-R3-CD, 2018 WL 300532, at *4 (Tenn. Crim. App. at Nashville, Jan. 5, 2018). Nevertheless, the Appellant is correct in that the State did not present any proof at the suppression hearing to support the need for deterrence. See State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991) (stating that the finding of deterrence must be supported by proof); State v. Demoss, No. M2019-01583-CCA-R3-CD, 2020 WL 4199987, at *9 (Tenn. Crim. App. at Nashville, July 22, 2020) (relying on Ashby, 823 S.W.2d at 170), perm. app. denied, (Tenn. Nov. 12, 2020). Therefore, the trial court erred by denying the Appellant's request for full probation based on the need for deterrence.

In any event, the trial court found that the victim suffered "grave" injuries, that the Appellant had "an extremely high level of intoxication," and that it would be inappropriate to allow the Appellant to "walk out on paper." This court has held that in vehicular assault cases involving intoxicated drivers where the victim suffers severe injuries, some confinement may be warranted in order to avoid depreciating the seriousness of the offense. State v. Kyte, 874 S.W.2d 631, 633 (Tenn. Crim. App. 1993). Furthermore, this case involved more than an intoxicated motorist causing serious bodily injury to another motorist. It involved the Appellant, with a blood alcohol content almost three times the legal limit, driving in the wrong lanes of an interstate late at night, crashing head-on into the victim's vehicle, and causing injuries so serious that the victim underwent seven surgeries and had his mobility permanently affected. As the trial court noted, "[I]t is an absolute miracle in this case that we have two human beings that survived this crash." Thus, we conclude that the trial court did not err by concluding that some confinement was necessary to avoid depreciating the seriousness of the offense and by ordering that the Appellant serve ten months in confinement.

- 11 -

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we conclude that the trial court misapplied two enhancement factors but that the record justifies the Appellant's four-year sentence and his ten months in confinement.  Therefore, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE